Filed 7/28/22  In re D.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.B., a Person Coming Under the Juvenile Court Law. | D080258 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Petitioner and Respondent, | (Super. Ct. No. J513817B) |
| v. | |
| J.J. | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel for Plaintiff and Respondent.

# I.

## INTRODUCTION

J.J. (Mother) appeals from jurisdictional and dispositional orders in dependency proceedings for her minor daughter, D.B.  The sole issue on appeal is whether the juvenile court erred by finding that the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) did not apply, before the San Diego County Health and Human Services Agency (Agency) completed its initial inquiry under ICWA and Welfare and Institutions Code section 224.2.[1] We conclude that the court did err in this regard.  We reverse the court's ICWA finding, remand for the limited purpose of ICWA compliance, and otherwise affirm the jurisdictional and dispositional orders.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In November 2021, when D.B. was six years old, Father was arrested with drugs while she was riding in his car.  Mother could not be reached, so D.B. was temporarily placed with Father's sister, Margaret (Maggie) B.  The Agency filed a dependency petition on D.B.'s behalf, which alleged that Father admitted using drugs while acting as her caregiver, Mother knew he cared for D.B. while under the influence of non-prescribed drugs (later amended by the juvenile court to say she knew or should have known), and Mother had a long history of substance abuse.

---

[1]    Further statutory references are to the Welfare and Institutions Code unless noted.

[2]    Because Mother's only contention on appeal concerns ICWA, we limit our factual background accordingly.  D.B.'s father, M.B. (Father), is not a party to this appeal, and we discuss him as needed.

The Indian Child Inquiry Attachment (ICWA 010(A)) to the petition, and the detention report, indicated that Mother was asked about Native American heritage and denied it. The detention report further indicated that Father had not yet been questioned, as he was incarcerated and unavailable for an interview. At the detention hearing, Mother's counsel confirmed that she denied Native American ancestry. The juvenile court deferred ruling on ICWA to the next court date, "pending [Father's] position."

The Agency provided its jurisdiction and disposition report in December 2021. Mother reported that her older child (D.B.'s half-brother) was living with her parents in Mexico. The social worker again asked Mother about Native American heritage, which she denied. The social worker was also able to ask Father, who likewise denied such heritage. The report further reflected that, by this point, the social worker had met or spoken with paternal aunt Maggie B., paternal uncle Dino B., and maternal aunt Brenda J., but had not asked any of them about Native American heritage. Maggie B. did state that D.B. would call the paternal grandmother, suggesting that the family was in contact with her. The Agency filed two subsequent addendum reports, and neither addressed ICWA.

At the initial jurisdiction and disposition hearing in December 2021, the juvenile court set the matter for a contested hearing at Mother's request, and did not address ICWA. The pretrial status conference hearing was in January 2022. County counsel noted that ICWA was still pending, and Father's counsel stated that Father denied Native American ancestry. The court found without prejudice that ICWA did not apply.

In March 2022, the juvenile court held the contested jurisdiction and disposition hearing. According to the reporter's transcript and minute order, Mother, Mother's support person Susie S., Father, and the social worker

3

appeared in person, and paternal aunt Maggie B. and D.B. appeared by telephone. The court asked Mother's counsel if Susie S. was a relative, and counsel said she was a family friend.

The juvenile court began by explaining that it had made an ICWA determination based on the parents' representations, and that it was asking them again if they had Native American heritage. Mother and Father each responded "No." The court asked Maggie B. as well, and she said "No." The court then stated, "I'll note for the record that we do have some other relatives that pop up throughout the reports. We have a maternal aunt. We also have paternal aunts and uncles. I think whenever we have contact with them we should have the [A]gency just ask that question. I know it's not the first thing that comes to your mind, because there is other things going on obviously, but just so we make sure. Given the information that we have and the inquiry that has been done, the court is comfortable going forward today unless anyone disagrees." None of the attorneys objected. The court reiterated in its minute order that it found without prejudice that ICWA did not apply.

The juvenile court made a true finding on the petition allegations, declared D.B. a dependent child, and removed her from parental custody. Toward the end of the hearing, the court permitted an attendee to speak. She was identified in the hearing transcript as "Grandmother," but did not identify herself as such; as we explain *post*, this appeared to be Mother's support person, Susie S. The attendee said that although she was "just a side person," she "want[ed] to say something because of how [she] [had] seen [D.B.] with her mother."

Mother timely appealed from the jurisdiction and disposition orders.

4

III.

DISCUSSION

Mother argues that the juvenile court erroneously found ICWA inapplicable, before the Agency completed its initial inquiry. We conclude that the ICWA finding must be reversed and the case remanded for ICWA compliance, and otherwise affirm the jurisdictional and dispositional orders.

A. *Applicable Law*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)

"Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents,

5

legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049.)

ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [extended family member "defined as provided in [§] 1903" of ICWA].)

We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

B. *Analysis*

A juvenile court finding that ICWA is inapplicable generally implies that the Agency has fulfilled its inquiry duty. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) Here, however, as Mother argues, the Agency acknowledges, and the juvenile court itself seemingly recognized, the initial inquiry of available relatives remained incomplete when the court found ICWA inapplicable. We conclude that substantial evidence does not support the court's ICWA finding. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) The parties remain in disagreement over the scope of the remaining inquiry, and the appropriate remedy. We address these issues in turn.

6

First, Mother contends that the Agency failed to ask five available relatives: maternal aunt Brenda J., paternal uncle Dino B., paternal aunt Maggie B., and the maternal grandparents (claiming that Mother's son was with them, and that the maternal grandmother could have been asked at the jurisdiction and disposition hearing). The Agency argues that only inquiry of Brenda J. and Dino B. remains, as the ICWA inquiry of Maggie B. was completed; it had no contact information for the maternal grandparents; and the grandmother was not at the hearing.

With respect to the aunts and uncles, we agree that the initial inquiry remains incomplete as to Brenda J. and Dino B., but conclude that it has been satisfied as to Maggie B. Aunts and uncles are extended family members within the meaning of ICWA. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) The Agency was required to ask them about Native American ancestry, and the juvenile court had to ensure this inquiry took place before it could find ICWA did not apply. (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049; see *In re Josiah T.* (2021) 71 Cal.App.5th 388, 403-404 (*Josiah T.*) [agency's "initial inquiry was inadequate," where "[d]espite having four paternal family members . . . potentially available to consult about American Indian ancestry," agency did not ask paternal grandmother until 18 months after the petition or other paternal relatives until later].) Although the Agency also did not ask Maggie B., she was present at the jurisdiction and disposition hearing, the juvenile court inquired whether she had Native American heritage, and she said no. Thus, no further inquiry of Maggie B. is needed.

We also agree that the initial inquiry has not been satisfied for D.B.'s grandparents, but not for all of the reasons urged by Mother. When viewed in context, it appears that the attendee who spoke at the jurisdiction and disposition hearing was Mother's support person and family friend, Susie S.,

7

and that she was misidentified in the reporter's transcript as "Grandmother." Both the transcript and minute order identified Susie S. as being in attendance; neither stated that a grandmother was there; and the juvenile court confirmed that Susie S. was not a relative. The attendee described herself as a "side person," and never said that she was D.B.'s grandmother. In any event, the record still reflects that the Agency did not complete its initial inquiry as to potentially available grandparents. (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049; see *Josiah T.*, *supra*, 71 Cal.App.5th at pp. 403-404.) Mother reported that her son lived with her parents in Mexico, so she might have contact information for them. Similarly, Maggie B. said D.B. called the paternal grandmother, suggesting the family had contact with her. Yet, there is no indication that the Agency requested contact information for the maternal grandparents or paternal grandparents, or made efforts to reach them.

Second, the parties disagree over the proper remedy here. Mother argues that the ICWA inquiry errors were prejudicial and require conditional reversal. The Agency appears to dispute that the errors were prejudicial, but agrees that it is appropriate for the Agency to complete its ICWA inquiry. We conclude that the errors were prejudicial, and a limited remand is necessary.

There is a split of authority in the California courts of appeal as to the proper standard for prejudicial error under ICWA. (See, e.g., *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777-779 [describing three rules for "assessing whether a defective initial inquiry is harmless" (" 'automatic reversal,' " " 'readily obtainable information,' " and " 'presumptive affirmance' ") and proposing a fourth (" 'reason to believe' ")].) Here, we need not and do not take a position on that standard, because the Agency's initial inquiry was

8

clearly inadequate as to multiple family members. Even the juvenile court seemingly recognized as much, when it stated there were "other relatives" in the reports and "whenever we have contact with them," the Agency should "ask . . . so we make sure"—yet proceeded without these answers and reiterated the premature ICWA finding in its minute order. These efforts were a fundamental departure from the " 'affirmative and continuing duty to inquire' " under ICWA, and a miscarriage of justice. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 9; Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].)

Asking extended family members not only is required (§ 224.2, subd. (b)), it also serves a meaningful purpose—"to obtain information the parent may not have." (*In re Y.W.* (2021) 70 Cal.App.5th 542, 556; see *In re T.G.* (2020) 58 Cal.App.5th 275, 295 ["General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved."]; *In re Rylei S.* (July 18, 2022, B316877) ___ Cal.App.5th ___ [2022 Cal.App. Lexis 627 at *18] [" 'When parents are the sole target of the initial inquiry, it should be understood that there are a variety of reasons why relying on the parents does not necessarily protect the child's best interests, or the rights of the tribe. Parents may simply not have that information, or may possess only vague or ambiguous information. [¶] The parents or Indian custodian may be fearful to self-identify, and social workers are ill-equipped to overcome that by explaining the rights a parent or Indian custodian has under the law. Parents may even wish to avoid the tribe's participation or assumption of jurisdiction,' " citing Cal. ICWA Compliance Task Force, Rep. to Cal. Atty. Gen.'s Bur. of Children's Justice

9

(2017) p. 28].)  Nor are we asking the Agency to " 'cast about' for investigative leads." (*In re A.M.* (2020) 47 Cal.App.5th 303, 323.)  An aunt and uncle were available, and contact details could be pursued for the grandparents.[3]

On this record, we must reverse the juvenile court's ICWA finding and remand for compliance with ICWA.  Because Mother does not contest the jurisdiction and disposition orders on any other grounds, we otherwise affirm these orders.  (See *In re Damian C.* (2009) 178 Cal.App.4th 192, 199-200; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1389.)

DISPOSITION

The juvenile court's ICWA finding is reversed, and the jurisdictional and dispositional orders are otherwise affirmed.  The matter is remanded to the juvenile court with directions to vacate its finding that ICWA does not apply and to instruct the Agency to complete its ICWA inquiry.  If the Agency or the juvenile court has reason to believe that D.B. is an Indian child, the juvenile court shall proceed appropriately.

BUCHANAN, J.


WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.

---

[3]     Accordingly, we reject the Agency's suggestion that because both parents denied Native American heritage (unlike in *Benjamin M.* (2021) 70 Cal.App.5th 735, 744, where the father's whereabouts were unknown), the relatives would be unlikely to have new information.

10